FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 14 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

Tyrone Thomas,

        Defendant.

15-CR-382

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

JACK B. WEINSTEIN, Senior United States District Judge:

**Appearances**

**For United States:**

    Lauren H. Elbert
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    718-254-7577
    lauren.elbert@usdoj.gov

    Michael P. Robotti
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    718-254-7576
    michael.robotti@usdoj.gov

**For Defendant:**

    Susan G. Kellman
    25 Eighth Avenue
    Brooklyn, NY 11217
    718-783-8200
    sgk@kellmanesq.com

## Table of Contents

I.   Introduction ............................................................................................................. 1
  A. Instant Offense ...................................................................................................... 1
  B. Arrest .................................................................................................................... 2
  C. Guilty Plea ............................................................................................................ 2
  D. Sentencing Hearing ............................................................................................... 2
II.  Offense Level, Category, and Sentencing Guidelines Range ................................ 3
III. Law ........................................................................................................................ 3
IV.  18 U.S.C. § 3553(a) Considerations ...................................................................... 4
V.   Sentence ................................................................................................................. 7
VI.  Conclusion ............................................................................................................. 7

### I. Introduction

This case illustrates a growing trend of heroin addiction traced to painkillers prescribed medically. Often, as in the present case, it leads to criminal conduct, selling drugs to finance the defendants' addiction. Defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin pursuant to 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). *See* Guilty Plea Transcript, March 10, 2016, ECF No. 178 ("Pleading Tr."), at 19:10-12. He was a minor member of a drug trafficking gang distributing heroin in Queens, New York. Eleven other defendants in the gang have been charged. Defendant's role was that of a user who sold the drugs to pay for his own need for drugs.

Defendant Thomas was sentenced to time served of approximately 23 months, supervised release for three years, and a $100 special assessment. *See* Sentencing Hr'g Tr., June 7, 2017 ("Sent. Hr'g").

### A. Instant Offense

He is 36 years old. Presentence Investigation Report, July 20, 2016 ("PSR") at 2. An investigation by Homeland Security and other law enforcement agencies in 2013 revealed that Thomas, together with many others, was in a street gang called Paper Chasing Goons. PSR at ¶

4. The gang maintained access to narcotics and firearms; some of its leaders distributed heroin to a network of drug traffickers who sold it to users. *Id.* at ¶¶ 4-5. They sold heroin from several stash houses. *Id.* at ¶¶ 5-6.

Monitored phone calls in March and June of 2015 revealed that Thomas purchased heroin from other members of the gang for distribution. *Id.* at ¶¶ 10-13. He was an independent drug dealer within the gang. *Id.* at ¶ 14.

### B. Arrest

Defendant was arrested by Homeland Security agents in July of 2015. *Id.* at ¶ 9. In December, he was released on a $75,000 bond, with the condition that he recieve residential substance abuse treatment. *Id.* at 1, ¶ 3. During this treatment he used heroin and Percocet and was remanded to custody in January of 2016. *Id.*

### C. Guilty Plea

In March of 2016, defendant Thomas pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(C); Pleading Tr. at 19:10-12. The offense carries a maximum term of imprisonment of 20 years, with no mandatory minimum. 21 U.S.C. § 841(b)(1)(C). A special assessment of $100 is mandatory.

### D. Sentencing Hearing

The sentencing proceedings were videotaped to record courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## II. Offense Level, Category, and Sentencing Guidelines Range

Defendant's base offense level is 30, with a criminal history category of III. *See* PSR at ¶¶ 34, 45-54. The offense level was decreased by three points pursuant to U.S.S.G. § 3E.1.1(a)-(b) for defendant's acceptance of responsibility. *Id.* at ¶¶ 41-42. The total adjusted offense level is 27. *Id.* at ¶ 43. The parties agree on this calculation. *See* Sent. Hr'g. The Guidelines imprisonment range is 87 to 108 months. *See* U.S.S.G. Ch. 5 Pt. A; PSR at ¶ 90.

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from them in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." (footnote omitted)).

## III. Law

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

3

The court's written statement of reasons must be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (alteration in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is encouraged. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## IV. 18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Thomas was born in 1979 in Queens, New York. PSR at ¶ 59. He was raised in a financially stable, middle-income hourshehold and described a generally happy, normal childhood. *Id.* at ¶ 62. His father, who died from cancer in the early 2000s, worked for the Metropolitan Transit Authority. His mother is a supervising chemist at New York Hospital in Queens. *Id.* at ¶ 59. His parents divorced nearly 20 years before his father's death. *Id.* He has a good relationship with his mother, who is aware of his conviction and remains supportive. *Id.* at ¶¶ 61-62. His only brother drowned in 1983, at the age of 14. *Id.* at ¶ 60.

Defendant Thomas has a three-year old child with his current girlfriend, who has described him as a supportive father. *Id.* at ¶ 63. He has two children from previous relationships, ages eight and 16, both of whom he supported financially. *Id.* at ¶ 64-65. His relationship with the mother of his 16-year old child ended 10 years ago, after she became addicted to drugs. He keeps in contact with the mother of his eight-year old child, who described him as a good father. *Id.*

Defendant graduated from high school in 1997, with above-average grades. *Id.* at ¶ 80. From 2000 to 2008, he was employed as a urinalysis technician, earning $16 per hour. *Id.* at ¶ 82. Before 2000, he worked as a superintendent and property manager for his uncle. *Id.*

Thomas has had difficulty leading a law-abiding life. He has been convicted of multiple misdemeanors, including one drug offense. *Id.* at ¶¶ 45-51.

He has been hospitalized several times for serious injuries. *Id.* at ¶¶ 69-72. As a young boy, he was involved in a car accident, and he suffered a permanent injury to his skull from the accident. *Id.* at ¶ 69. In 2009, he was shot in the back during a robbery attempt and was hospitalized for nearly two months, spending part of that time on life support. *Id.* at ¶ 70. In 2012, he was hit in the face with a bottle during a fight and was hospitalized for two weeks. *Id.* at ¶ 71. He has also been hospitalized for several drug-related incidents. *Id.* at ¶ 72.

Thomas has no history of mental illness, but he believes that he may have post-traumatic stress disorder as a result of being shot. *Id.* at ¶ 74. He has a history of substance abuse. He smoked marijuana from the age of 16 until four years ago, when he became addicted to painkillers and heroin. *Id.* at ¶ 77. He completed an outpatient drug treatment program for his marijuana use approximately 10 years ago. *Id.* He first used painkillers as prescribed by his doctor after he was shot in 2009, but he became addicted and began illegally buying them on his

own. *Id.* at ¶ 78. When the pills became too expensive, he switched to heroin and began using the drug daily, snorting it two to three times each day. *Id.*

The abuse of prescription medication is an increasingly common problem in the United States:

> The abuse of prescription medication is a matter of deep concern. It is increasingly common. Widespread prescribing of opioids for chronic pain, despite many known and unknown risks, has made these drugs readily accessible. *Prescription Opioids*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/drugoverdose/opioids/prescribed.html (last updated Mar. 16, 2016). Opioids killed over 33,000 people in 2015. Half of those deaths were caused by prescription medications such as Oxycodone or Percocet. This is a record-breaking number of deaths. *Opioid Overdose*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/drugoverdose/index.html (last updated Apr. 16, 2017). Pain-related health problems do not vary much per capita in states. There is no explanation for why doctors in one state prescribe[ ] more painkillers than another. But states with higher numbers of pain related prescriptions are associated with more overdose deaths. *Opioid Painkiller Prescribing*, CENTERS FOR DISEASE CONTROL AND PREVENTION (July 2014), https://www.cdc.gov/vitalsigns/opioid-prescribing/. Over-prescribing pain-management medication frequently results in improper use. The prevalence of such misuse is currently being classified as an epidemic. "In the 2013 and 2014 National Survey on Drug Use and Health (NSDUH), 50.5% of people who misused prescription painkillers got them from a friend or relative for free, and 22.1% got them from a doctor." *Opioids*, SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION, https://www.samhsa.gov/atod/opioids (last updated Feb. 23, 2016).
>
> As people continue to use painkillers, their bodies develop a tolerance, which causes them to either need more pills to feel the effect or to switch to a cheaper and more powerful substitute: heroin. *Id.* From 2000–2015, the rate of heroin related deaths in the United States has more than [tripled], with . . . 12,989 killed in 2015. *Understanding the Epidemic*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/drugoverdose/epidemic/index.html (last updated Dec. 16, 2016). The high correlation between prescription painkillers and heroin use—which often leads to incarceration—is directly attributable to the wide availability and over-prescription of opiate medications.

*United States v. Scott*, No. 15-CR-382, 2017 WL 1154711, at *4 (E.D.N.Y. Mar. 8, 2017) (citations updated).

Thomas is a victim of this growing trend of users of prescribed opiates to switch to illegal heroin. His use of heroin and participation in the gang can be traced back to the opiod prescriptions he received following his back injury in 2009. Sent. Hr'g. He is no longer using drugs, but he agrees that he should receive further substance abuse counseling. *Id.*

## V. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence.

In light of the nature of the offense and the characteristics of the defendant, Thomas is sentenced to time served after 23 months of incarceration. *See* Sent. Hr'g. A $100 special assessment is imposed. 18 U.S.C. § 3013. No fine is levied in light of the defendant's inability to pay one. *See* Sent. Hr'g; PSR at ¶ 88. Three years of supervised release is ordered. *See* Sent. Hr'g.

General and specific deterrence are achieved by the sentence imposed. Thomas pled guilty to a serious offense. He has expressed genuine remorse for his conduct and understands the gravity of his actions.

## VI. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 12, 2017
Brooklyn, New York