UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>TYRONE THOMAS,<br><br>               Defendant. | 15-CR-382<br><br>**MEMORANDUM & ORDER**<br>**TERMINATION OF PROBATION** |

**JACK B. WEINSTEIN**, Senior United States District Judge

| Parties | Appearances |
|---|---|
| United States of America | **Erin Reid**<br>United States Attorney's Office<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, NY 11201<br>718-254-6076 |
| Tyrone Thomas | **Susan G. Kellman**<br>25 Eighth Avenue<br>Brooklyn, NY 11217<br>718-783-8200 |

**Table of Contents**

I. Introduction ............................................................................................................................ 1
II. Facts ..................................................................................................................................... 3
   A. Background ..................................................................................................................... 3
   B. Underlying Charge .......................................................................................................... 5
   C. Sentence ........................................................................................................................... 5
   D. Violations of Supervised Release Conditions ................................................................. 5
   E. Alcohol Use in the United States ..................................................................................... 7
   F. Demographic Disparities in Alcohol Use ........................................................................ 9
III. Law .................................................................................................................................... 10
   A. Purpose of Supervised Release ...................................................................................... 10
   B. Conditions of Supervised Release ................................................................................. 11
   C. Modification of Conditions and Termination of Supervised Release ........................... 12
   D. Use of Supervised Release in Sentencing ..................................................................... 13
   E. Continued Efficacy of Supervised Release ................................................................... 14
IV. Application of Law to Facts .............................................................................................. 14
   A. 3553(a) Factors .............................................................................................................. 14
   B. Conduct of Defendant and Interests of Justice .............................................................. 15
   C. Unsealing Orders Modifying Conditions of Supervised Release .................................. 15
V. Conclusion .......................................................................................................................... 16

I. Introduction

This case concerns supervised release and substance use, issues that were discussed in *United States v. Trotter*. *See generally United States v. Trotter*, 321 F. Supp. 3d 337 (E.D.N.Y. 2018). In *Trotter*, the trial court dealt with the issue of whether and how to punish supervisees for their marijuana addictions. The conclusion was that it is appropriate to "avoid violations of supervised release and punishment by incarceration merely for habitual marijuana use." *Id.* at 339. The policy was designed to aid reintegration into the community. *Id.*

The instant memorandum considers another important issue in supervised release: what to do with a supervisee who habitually uses alcohol in socially acceptable amounts and conditions

violating the terms of his supervised release. The marijuana holding in *Trotter* is followed and extended to habitual use of alcohol socially: it avoids violations of supervised release and punishment by incarceration merely for alcohol use.

The court will not find violations of supervised release and punishment by incarceration merely for habitual, socially acceptable use of alcohol except in unusual cases. When a supervisee appears to be reintegrated into society but uses alcohol socially, the supervisee shows no interest in stopping alcohol use, and alcohol played no part in the underlying offense, the court will consider terminating supervision, releasing defendant as unimproved with respect to this habit.

The purpose of federal supervised release is to assist individuals convicted of crimes rehabilitate by provision of monitoring and other services. The United States Probation Department ("Probation") monitors individuals on supervised release and can help a supervisee with his or her reintegration into lawful society by providing drug and alcohol treatment, mental health counseling, vocational training, and many other services to help reduce risks of recidivism.

Following a term of incarceration, successful reintegration into the community is paramount. Reconnections with family and employment are vital. *See generally* Mark T. Berg & Beth M. Huebner, *Reentry and the Ties That Bind: An Examination of Social Ties, Employment, and Recidivism*, 28 Just. Q. 382 (2011). "Every time a connection is broken with the world outside of prison, by unnecessary incarceration following violations of supervised release, it probably becomes more difficult to reconnect." *Trotter*, 321 F. Supp. 3d at 340.

Violations of supervised release may result in—and in certain instances must result in—incarceration. This situation traps some defendants in a cycle of supervised release and prison.

Like many Americans, Tyrone Thomas drinks alcohol socially, mainly in the form of beer. He has done so for more than a decade. Since leaving prison where he was incarcerated on a federal drug distribution charge, his only violations of supervised release conditions have been for relatively minor alcohol use.

Thomas is employed and has a stable home life. But his alcohol use, Probation believes, should mean incarceration for violation of one of the conditions of his supervised release. Supervised release, thus, has become a hindrance to this defendant's full reintegration into society.

Using Probation's limited resources on a supervisee whose only violation is that he imbibes and enjoys alcohol on occasion—a legal and widely used substance—is a waste of resources. *Cf.* U.S. Courts, *Probation Offices Look to Technology to Offset Budget, Staffing Reductions* (Apr. 18, 2012) (discussing innovative measures taken by Probation to offset budgetary concerns). "Probation . . . should be focused on assisting those defendants with the potential for success, not on those doomed to fail" because they use a substance widely approved and used in society at all socioeconomic levels. *Trotter*, 321 F. Supp. 3d at 340.

II. Facts

A. Background

The defendant, now 38-years-old, was born in Queens. Presentence Investigative Report ¶ 62 ("PSR"). He was raised in a financially stable, middle-income household and describes a generally happy, normal childhood. *Id.* Thomas's father, who died from cancer in the early 2000s, worked for the Metropolitan Transit Authority. PSR ¶ 59. His mother is a supervising chemist at New York Hospital in Queens. *Id.* The defendant's only brother drowned in 1983, at

3

age 14 when the defendant was only three-years-old. PSR ¶ 60. And his parents divorced around that time. *See* PSR ¶¶ 59–60.

The defendant has three children: a three-year-old son, an eight-year-old daughter, and a 16-year-old daughter. PSR ¶¶ 63–65. Both the mother of his three-year-old and the mother of his eight-year-old described the defendant as a good parent. PSR ¶¶ 63, 65. Thomas no longer has any relationship with the mother of his 16-year-old, because they separated after she became addicted to drugs. PSR ¶ 64.

Thomas graduated from high school in 1997, with above-average grades. PSR ¶ 80. From 2000 to 2008, he was employed as a urinalysis technician. PSR ¶ 82. Before 2000, he worked as a superintendent and property manager for his uncle. PSR ¶¶ 81–83. He now works full-time as a messenger, delivering medicine on foot. Hr'g Tr. 3:6–17, 4:24–25, Oct. 17, 2018.

This supervisee lives with his mother. *Id.* at 4:2–3. She remains supportive. PSR ¶ 59.

The defendant has a history of substance abuse, including smoking marijuana and addiction to painkillers and heroin. PSR ¶ 76. His use of heroin can be traced back to the painkillers he received following an injury in 2009. *See United States v. Thomas*, 255 F. Supp. 3d 400, 404 (E.D.N.Y. 2017) (citations omitted). Currently, Thomas uses neither marijuana nor opioids. Hr'g Tr. 8:3–14, Oct. 17, 2018.

He began drinking alcohol on social occasions when he was 25. *Id.* at 7:1–3. He drinks regularly but not excessively. *Id.* at 7:13–14 ("I come home, sometimes I have a couple of beers and I go to bed.").

Thomas has one drug offense and one for driving under the influence of alcohol. PSR ¶¶ 46, 50.

B. Underlying Charge

On March 10, 2016, the defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin. Hr'g Tr. 19:10-12, ECF No. 178, Apr. 18, 2016. He and others were in a street gang. PSR ¶ 4. The gang maintained access to narcotics and firearms; some of its leaders distributed heroin to a network of drug traffickers who sold it to users; the gang used several stash houses. PSR ¶¶ 4–6. Thomas purchased heroin from members of the gang for distribution and acted as an independent drug dealer. PSR ¶¶ 10–14. His drug selling income was largely devoted to obtaining drugs for his own use. *See Thomas*, 255 F. Supp. 3d at 401.

C. Sentence

After 23 months of incarceration, Thomas was sentenced to time served. *Id.* at 405. Three years of supervised release was imposed. *Id.* In addition to the mandatory and standard conditions of supervised release, the following special conditions were imposed: (1) participation in a drug treatment program; and (2) strict supervision by Probation. J. in a Criminal Case 5, ECF No. 454, June 14, 2017.

D. Violations of Supervised Release Conditions

In November 2017, Probation reported that Thomas had violated the terms of supervised release by consuming alcohol while participating in a drug treatment program. Order Modifying the Conditions or Term of Supervision with Consent of the Offender 2, ECF No. 493, Nov. 26, 2017. He agreed to modified conditions of supervised release, including that he would not consume any alcohol during and after drug treatment without a prescription. *Id.* at 1.

In March 2018, Probation reported that Thomas had tested positive for alcohol after being referred for an intake evaluation in connection with proposed outpatient drug treatment. Report

on Offender Under Supervision, ECF No. 521, Mar. 22, 2018. He tested positive for alcohol in May 2018 while participating in an outpatient drug treatment program. Order Modifying the Conditions or Term of Supervision with Consent of the Offender 2, ECF No. 541, June 25, 2018. Thomas agreed to modified conditions of supervised release, including, that he would not consume alcohol during the period of supervised release and that he would carry a portable alcohol monitoring device for a period of 60 days. *Id.* at 1.

He no longer tests positive for drugs. Violation of Supervised Release Report 10 (Aug. 9, 2018). There is no evidence that he sells drugs or associates with drug dealers.

After being provided with an alcohol monitoring device in July, the defendant was late for or missed four scheduled alcohol use tests. *Id.* at 7–8. Probation sought, and Thomas agreed, to extend the period of time for which he would carry a portable alcohol monitoring device for 30 days. Order Modifying the Conditions or Term of Supervision with Consent of the Offender 2, ECF No. 557, July 27, 2018. He then tested positive for alcohol on July 30, after missing tests on the two prior days. Violation of Supervised Release Report 8 (Aug. 9, 2018). In August, Thomas tested positive for alcohol on three separate days, and later missed more than a dozen alcohol tests. *Id.* at 8–10.

Thomas pled not guilty to the alcohol violation charges. *See* Minute Entry for Initial Appearance, ECF No. 567, Sept. 28, 2018. A hearing was held on October 17, 2018. *See generally* Hr'g Tr., Oct. 17, 2018. Probation requested that the defendant be sentenced to five months incarceration and two years of supervised release for his violations—use of alcohol. Violation of Supervised Release Report 13 (Aug. 9, 2018).

E. Alcohol Use in the United States

Possession and use of alcohol in the United States is regulated by the states. U.S. Const. amend. XXI, § 2. It is legal in every state. National Institute on Alcohol Abuse and Alcoholism, *Alcohol Policy*, https://www.niaaa.nih.gov/alcohol-health/alcohol-policy (last visited Oct. 23, 2018).

Drinking alcohol in the United States is widespread. According to the 2017 National Survey on Drug Use and Health, 80.9% of people ages 12 or older reported that they had drunk alcohol in their lifetime, 65.7% reported that they had used alcohol in the past year, and 51.7% reported that they had used alcohol in the past month. Substance Abuse and Mental Health Services Administration, *Results from the 2017 National Survey on Drug Use and Health* Table 2.1B (2017), https://www.samhsa.gov/data/report/2017-nsduh-detailed-tables [hereinafter 2017 SAMHSA Survey]. Nearly a quarter of people ages 12 or over reported "binge drinking"— "drinking five or more drinks (for males) or four or more drinks (for females) . . . at the same time or within a couple of hours of each other . . . on at least 1 day in the past 30 days." *Id.* Table 2.1B. A greater percentage of people use alcohol than marijuana. *Id.* Table 1.32B (45.2% of people ages 12 and older used marijuana in their lifetime).

Despite its widespread use, alcohol is not without serious health and adverse conduct inducing concerns. In 1988, the World Health Organization's International Agency for Research on Cancer concluded that alcoholic beverages are human carcinogens. World Health Organization, International Agency for Research on Cancer, *IARC Monographs on the Evaluation of the Carcinogenic Risks to Humans: Alcohol Drinking* 258 (1988), https://monographs.iarc.fr/wp-content/uploads/2018/06/mono44.pdf. According to the Centers for Disease Control and Prevention, drinking in excess of one drink per day (for women) and two

drinks per day (for men) can lead to short term and long-term adverse health effects, including physical injury, heart disease, and cancer. Centers for Disease Control and Prevention, *Fact Sheets – Alcohol Use and Your Health* (Jan. 3, 2018), https://www.cdc.gov/alcohol/fact-sheets/alcohol-use.htm. A recent study of alcohol use concluded that alcohol accounted for nearly 10% of global deaths among populations aged 15 to 49. GBD 2016 Alcohol Collaborators, *Alcohol use and burden for 195 countries and territories, 1990–2016: a systemic analysis for the Global Burden of Disease Study 2016*, 392 Lancet 1015, 1026 (2018). The conclusion was: "the safest level of drinking is none." *Id.*

Alcohol use correlates with commission of crimes. The Bureau of Justice Statistics estimates that 32.6% of state prisoners serving time for an offense reported that they were under the influence of alcohol at the time of the offense. Bureau of Justice Statistics, *Alcohol And Crime: Data From 2002 To 2008* (July 28, 2010), https://www.bjs.gov/content/acf/29_prisoners_and_alcoholuse.cfm. The same is true for 18.5% of federal prisoners. *Id.* For both federal and state prisoners, this percentage is higher among those who commit violent offenses. *Id.* The literature is less definitive as to whether alcohol use *causes* crime—the exception obviously being driving under the influence of alcohol. *See generally* Christopher Carpenter, *Heavy Alcohol Use and Crime: Evidence from Underage Drunk-Driving Laws*, 50 J. L. & Econ. 539 (2007) (discussing literature on link between alcohol and crime).

Despite these health and safety concerns, there is little appetite in the United States for prohibition. *See, e.g.*, CNN ORC Poll 6 (Jan. 7, 2014), http://i2.cdn.turner.com/cnn/2014/images/01/07/cnn.orc.poll.marijuana.1-7.pdf (81% of people

think that use of alcohol should be legal, compared with 18% who think it should be illegal);

U.S. Const. amend. XVIII (Prohibition); U.S. Const. amend. XXI (abolishing Prohibition).

F.  Demographic Disparities in Alcohol Use

Alcohol use varies by race and socioeconomic background.  People in countries with a more advanced economy—based on educational attainment, fertility, and income per capita—use alcohol the most.  GBD 2016 Alcohol Collaborators, *supra*, at 1020.  Whites are more likely to drink alcohol than African Americans or Hispanics.  2017 SAMHSA Survey, *supra*, Table 2.33B (86.2% of Whites ages 12 or over reported using alcohol in their lifetime compared with 72.4% of African Americans and 73.3% of Hispanics); *id.* Table 2.34B (70.2% of Whites ages 12 or over reported having used alcohol in the last year, compared with 57.4% of African Americans and 60% of Hispanics); *id.* Table 2.35B (56.8% of Whites ages 12 or over reported having used alcohol in the last month, compared to 43% of African Americans and 44.7% of Hispanics).

Although individuals with "higher [socioeconomic status] may consume similar or greater amounts of alcohol compared with individuals with lower [socioeconomic status], the latter group seems to bear a disproportionate burden of negative alcohol-related consequences."  Susan E. Collins, *Associations Between Socioeconomic Factors and Alcohol Outcomes*, 38 Alcohol Research: Current Reviews 83, 93 (2016); *see generally id.* (collecting literature and studies).  A 2014 study concluded that lower socioeconomic status increased the likelihood of alcohol-related mortality—by 66% for men and by 78% for women.  Charlotte Probst, et al., *Socioeconomic differences in alcohol-attributable mortality compared with all-cause mortality: A systematic review and meta-analysis*, 43 Int'l J. of Epidemiology 1314 (2014).  With unemployment and homelessness associated with increased alcohol use, it seems uncontroversial that the poor are more likely to suffer negative effects of alcohol use.  *See* Collins, *supra*, at 91.

III. Law

The court has discussed in detail the background of and policy underlying supervised release. *See generally Trotter*, 321 F. Supp. 3d. The conclusions are briefly summarized below. *Trotter* related to marijuana use. The instant case applies *Trotter*'s conclusions on marijuana to alcohol.

### A. Purpose of Supervised Release

"Supervised release is designed to assist with rehabilitation, not to punish." *Id.* at 345; *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("supervised release fulfills rehabilitative ends, distinct from those served by incarceration"); *United States v. Granderson*, 511 U.S. 39, 50 (1994) ("Supervised release, in contrast to probation, is not a punishment in lieu of incarceration."); Christine S. Scott-Hayward, *Shadow Sentencing: The Imposition of Federal Supervised Release*, 18 Berkeley J. Crim. L. 180, 191–92 (2013).

Congress was clear as to the policy underlying supervised release—to aid transition into a lawful, social way of life.

> "[T]he primary goal of [Supervised Release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release."

S. Rep. No. 98-225, at 124 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3307.

During a term of supervised release, Probation "monitors individuals . . . and can help a supervisee with his or her reintegration into lawful society by providing drug treatment, mental health counseling, vocational training, and many other services to help reduce recidivism." *Trotter*, 321 F. Supp. 3d at 339.

B. Conditions of Supervised Release

There are mandatory, standard, and special conditions of supervised release. U.S. Sentencing Commission, *Supervised Release* 16–17 (Apr. 2017); *Trotter*, 321 F. Supp. 3d at 350–52. Standard and special conditions are generally discretionary. *Trotter*, 321 F. Supp. 3d at 349. Conditions of supervised release reflect its rehabilitative goal; courts must consider "provid[ing] the defendant with needed education or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(D); *see also* Fiona Doherty, *Indeterminate Sentencing Returns: The Invention of Supervised Release*, 88 N.Y.U. L. Rev. 958, 1012–13 (2013) (a court may require participation in substance abuse treatment and mental health treatment, and Probation can assist a supervisee find a job).

A supervisee may be punished for violating conditions, including by a term of incarceration. 18 U.S.C. § 3583(e)(3). In some instances, a term of incarceration is required following a violation. *Id.* § 3583(g).

A sentencing court's discretion in imposing special conditions is constrained by the United States Constitution. *See, e.g.*, *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005) ("[W]hen a fundamental liberty interest is implicated by a sentencing condition, we must first consider the sentencing goal to which the condition relates . . .[w]e must then consider whether it represents a greater deprivation of liberty than is necessary to achieve that goal."). Courts also limit those conditions of supervised release that may unnecessarily inhibit a defendant's employment prospects. *See Trotter*, 321 F. Supp. 3d at 358.

Two special conditions may be implemented related to alcohol use: required participation in an alcohol abuse program and prohibition of the use or possession of alcohol. U.S. Sentencing Commission, *Supervised Release* 17 (Apr. 2017).

Courts considering the implementation of conditions relating to alcohol use have imposed such conditions cautiously. *See, e.g.*, *United States v. Betts*, 511 F.3d 872, 880 (9th Cir. 2007) ("Moderate consumption of alcohol does not rise to the dignity of our sacred liberties, such as freedom of speech, but the freedom to drink a beer while sitting in a recliner and watching a football game is nevertheless a liberty people have, and it is probably exercised by more people than the liberty to publish a political opinion. Liberties can be taken away during supervised release to deter crime, protect the public, and provide correctional treatment . . . ."); *United States v. Jackson*, No. CRIM.A. 3:02-00181, 2009 WL 3805588, at *2 (M.D. Tenn. Nov. 12, 2009) ("Courts have imposed a total ban on the Defendant's use of alcohol only where the Defendant's alcohol use is tied to the underlying crime, . . . or the evidence establishes such a ban is necessary and reasonably related to the defendant's rehabilitation, . . . or to protect the Defendant's family from abuse, . . . or to protect the public." (internal citations omitted)).

C. Modification of Conditions and Termination of Supervised Release

A court may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release . . . ." 18 U.S.C. § 3583(e)(2). Prior to modification, the court must consider the factors listed in 18 U.S.C. § 3553(a) and hold a hearing. *See id.*; Fed. R. Crim. P. 32.1.

Supervised release may be terminated early at the discretion of the district court, "at any time after the expiration of one year of supervised release[,] . . . if it is satisfied that such action is [1] warranted by the conduct of the defendant released and [2] the interest of justice." 18 U.S.C. § 3583(e)(1). The court must consider several factors in deciding on early termination:

(i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1);

(ii) the need for the sentence imposed "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D);

(iii) the "kinds of sentence and the sentencing range established for the applicable category of offense [or violation of probation or supervised release] committed by the applicable category of defendant" under the Sentencing Guidelines, *id.* § 3553(a)(4);

(iv) "any pertinent policy statement issued by the Sentencing Commission," *id.* § 3553(a)(5); and

(v) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .," *id.* § 3553(a)(6).

*United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997); *see also id.* at 36; *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010); *United States v. Sheckley*, 129 F.3d 114 (2d Cir. 1997).

D. Use of Supervised Release in Sentencing

Supervised release is imposed as a part of nearly every sentence even though it is required in fewer than half of federal cases. Scott-Hayward, *supra*, at 192; *id.* at 207 (judges in the Eastern District of New York impose supervised release in 94% of cases). It is accompanied by the "threat of never-ending supervision" due to violations of supervised release conditions, which may result in incarceration and/or lengthened terms of supervised release. *See* Nora V. Demleitner, *How to Change the Philosophy and Practice of Probation and Supervised Release: Data Analytics, Cost Control, Focus on Reentry, and a Clear Mission*, 28 Fed. Sent'g Rep. 231, 232 (2016) (internal citations and quotation marks omitted).

13

E. Continued Efficacy of Supervised Release

A court's ability to terminate supervision early or modify conditions provides an opportunity to reevaluate the efficacy of a supervised release term throughout its duration. Termination is appropriate when the rehabilitative goals of supervised release may no longer be attained or can be attained at too great a cost to the defendant and society. *See Trotter*, 321 F. Supp.3d at 364 (terminating supervised release for a habitual user of marijuana when continued supervision was unlikely to rehabilitate him).

IV. Application of Law to Facts

"The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583.

A. 3553(a) Factors

Thomas suffered from drug addiction at the time he committed the crime that led to his incarceration and supervision. He has completed treatment for opioid addiction and no longer uses illegal substances. His involvement in the underlying criminal scheme funded his own drug and opioid addiction—one connected to medical treatment. His alcohol use is and was unrelated to his opioid addiction and his role in any criminal scheme.

Thomas has demonstrated that he probably will continue to use alcohol socially. He is fully employed and appears to have a stable home.

Continued supervision will probably interfere with his reintegration into society. He may needlessly be placed in prison. Extended supervision is unlikely to have any deterrent effect on

him personally or on the public generally. His family and community, including consistent and stable employment, will probably help him avoid criminal conduct.

    B. Conduct of Defendant and Interests of Justice

Since his release from jail, Thomas has not committed any crimes. *See* Hr'g Tr. 7:22–8:1, Oct. 17, 2018. He has been working. *Id*. at 3:6–24. With support of friends and family, he is likely to lead a productive, law-abiding life.

Continued supervision is unlikely to assist in the rehabilitation of Thomas. He began using alcohol more than a decade ago. He appears to be unable to stop using alcohol socially. This habit has led to, and will necessarily lead to, conflict between Thomas and his supervisor.

The government seeks to punish the defendant for something that is legal, and of which an overwhelming majority of Americans approve. This would be unfair, since he is employed and has been otherwise compliant with the terms of his supervised release. The court will not incarcerate him for violating the conditions of supervised release when those violations are for habitual, social or approved alcohol use.

The court should avoid a cycle of supervised release, use of alcohol, and prison. Thomas has been unable or unwilling to comply with the conditions relating to alcohol for nearly a year, so he would be likely to remain in future violations of supervision conditions.

    C. Unsealing Orders Modifying Conditions of Supervised Release

There is a strong presumption of public access to documents relating to sentencing. *See United States v. Alcantara*, 396 F.3d 189, 198–99 (2d Cir. 2005) ("Access to sentencing proceedings—and to guilty plea proceedings—is particularly important because most cases do not go to trial."); *see also United States v. Munir*, 953 F. Supp. 2d 470, 474–475 (E.D.N.Y. 2013) (summary of the law governing access to judicial documents).

The court orders the following orders modifying the conditions of Thomas's supervised release unsealed: ECF No. 493, ECF No. 541, ECF No. 557.

V. Conclusion

Thomas's term of supervised release is terminated forthwith pursuant to 18 U.S.C. § 3583(e)(1). Continued supervision would not serve any rehabilitative goal; it would inhibit rehabilitation.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: November 6, 2018
Brooklyn, New York